With that, we will proceed to the last case on the argument calendar, Caseli v. Liberty Healthcare. Good morning, Your Honors. My name is David Farahan, and I'm representing Sue Caseli, who's the plaintiff appellate in this case. This is a whistleblower. Counselor, could you speak a little closer with the microphone a little closer to the whistleblower sexual harassment discrimination case? And Sue is a lady who was hired and then promoted and then praised. But then she complained. She blew the whistle. She complained about sexual harassment and blew the whistle on the company's practices. And she was suddenly a pariah. She was ignored. She was disciplined and she was fired. There seems to me one critical fact in this case, and that is, does the appellant, how do you pronounce her name? Caseli. Caseli. You can call her Sue. Does she dispute that this DDD, the state organization, wanted her off the project? She does. There's no evidence of that other than the Liberty's counsel argument. We don't know, and the court can't tell, but a jury should tell us what the legitimate reason was for firing Sue. But you had an obligation to come forth with some evidence to create a genuine issue of fact. And it seems as though you could have gone to the director of DDD or someone else to dispute that and were, you know, in deposition. Well, we submitted Sue's declaration, which is evidence. Her evidence needs to be believed and all reasonable evidence is drawn from that evidence. The plaintiff's declaration. And Liberty, in defense, really hasn't disputed what she claims in her declaration. I'm looking, for example, at an e-mail. Yes. I think it's ER275-276 from Roberta Ellerston. She's the client, right? Pardon? She's the client, right? She's the one who. The state, yes. And it says here, Sue, after talking with staff last Friday in my discussion with Dr. Peterson, I want to pull all Liberty staff from working directly with our individual staff. That is evidence that the district court could consider, right? Of course. And isn't that supportive of the defendant's position? Well, it's defendant's evidence, but it's not definitive evidence. What was Liberty's reason for firing Sue? Ms. Obert says in her deposition that she decided to fire Sue when she received a July 22 e-mail from the state. Then Sue was told when she was fired, you know, no one is saying that you did a bad job. That's completely antithetical to what Ms. Obert testified. But she wasn't fired for doing a bad job per se. She was fired because the only client of the defendant here wanted her removed. And it appears to me that there's no evidence that their request was motivated by any discriminatory or retaliatory reason. It was motivated by interpersonal difficulties and by your client's dissemination to a bunch of people of an otherwise private e-mail. That seemed to be the last straw. So why isn't – where do you come up with pretext in view of that? Well, because, again, Ms. Obert said she was fired for performance issues, or she decided to fire her for that. HR told her you didn't do a bad job when saying that. And then when we get into district court, the reason turns to the state wanted her gone. The state demanded her be fired. But the timing isn't right. The state argues that Liberty wanted her gone before Ms. Obert decided to fire her. Well, she was – the decision was made just a couple of days after – as I understand the record. Just a couple of – excuse me, let me finish the question. Just a couple of days after the inappropriate dissemination of the criticisms from the state. Is that your understanding of the timing as well? That's not my understanding, or I don't know what Liberty is arguing, because they argue – Well, I don't know what they're arguing. I'm looking at the record. July 23rd, Obert is contacted saying my concerns were not meant to be dispersed verbatim among the Liberty staff, but it had been. That's at ER 303. Right. And then, as I understand it, Obert's decision was made just a day or two later, and that's at ER 325. So the timeline isn't – I guess that – I'm asking you whether you disagree with that timeline. Well, Liberty disagrees with its own timeline. Liberty says she was – that the state wanted her gone before those emails, before the conversation. And they resisted it, apparently, until she did this one precipitating act. Yeah, and that's another big fact question, Your Honor. Why is that a fact question? Well, because Sue did distribute the emails to her coworkers, but she was told to do that by Gibbs, the director of operations. She was told that. Gibbs has never denied that. Yeah, so when I'm looking at your client's deposition at ER 334 regarding what your client was informed by Kate Obert, your client testified, I remember her telling me that Roberta Ellerston had a lack of faith in my ability to lead the project and that Ginny and Zane were backing her up. That's my recollection. Is there any evidence in the record that that was not what Roberta Ellerston had communicated? No, Your Honor, but there's other evidence that contradicts that. Contradicts what? Contradicts that fact. There are facts in the record that contradict what Liberty claims was the reason it fired her. No, but is there evidence that contradicts that that is what they were told, that what your client was told was, in fact, what Liberty was told by the state? Yes. If you believe the testimony, yes. So there is evidence that suggests that they were lying to your client when they said that Roberta Ellerston told them that there was a lack of faith? Well, it's not a matter of – I mean, Liberty knows what it was told and when it was told. And my position is that it shifts back and forth the reason why she was fired. Liberty says she was told – the state told Ms. Obert to fire Sue Caselli before the e-mails, the July 22 and 23 e-mails. Then it says in its brief to this court, in subsequent conversations, quote, unquote, Liberty demanded that Sue be fired. It can't get its story straight. And these are facts that the jury must address. This is not a summary judgment case. This is a case full of fact questions, reasonable inferences from those facts that should go to a jury to see who is telling the truth and who isn't. Okay? Now, the last straw, as the district court said and Liberty says, was the June 22 e-mail that Ms. Obert distributed to her co-workers. Judge, you call that improper, right? It wasn't improper. She was told to do it by Mr. Gibbs, the director of operations. She was told to do that. So at the very least, when the state complained about Liberty's job performance, Ms. Obert and the e-mail said that's very inappropriate. Ms. Obert at the very least should have fessed up and said, well, Sue wasn't responsible for that. Mr. Gibbs told her to do it. I'm having trouble seeing how that is relevant. If this was what the state told them and the state was unhappy and the only work your client was doing was for the state, why did Liberty have an obligation, even if you're right, to tell them no, no, no, it's not her fault? Why is there an obligation to do that? Why does that help establish pretext as the district court found that based on the undisputed evidence, this is what the state communicated and this is basically the only client on this project and our main goal is to keep the client happy, not to keep Ms. Caselli happy. That's true. But why should she have said that, to be honest? At the very least, she shouldn't have punished or Mr. Gibbs shouldn't have punished Sue as a last straw you're fired for doing it. At Mr. Gibbs' direction. I think maybe I think I have the same question as Judge Bennett, and I'm not sure. At least I didn't understand the answer to be totally responsive. When you have one client, that is your entire business relationship that this employee was involved in, and the client says, I don't want to work with that person anymore. Why can't the employer say, okay, we'll let that person go. If the reason that the client gives is not discriminatory. I mean, they didn't say we want her gone because she's female or we want her gone because we heard that she criticized some billing practices. They wanted her gone because of interpersonal relationships and difficulty working with her, as I understand it. Well, that's Liberty's story. But it's not a dispositive fact. The fact that the core facts are that Ms. Caselli complained or reported the company's malfeasance and contract performance. She reported it. What did Liberty do about it?  But the client who asked that she be taken off of their work didn't apparently there's no evidence, I will say, that they knew that or that they took that into account in any way. Well, no, there isn't. But there's no direct evidence that they did or when they did it. This is a story. Liberty says that the state wanted her gone. When did that happen? After the June 23 email? In subsequent conversations? Well, that would have been after Ms. Obert said she decided to fire Sue. So it is protectable. It doesn't fit. It doesn't fit the timeline. It doesn't fit Liberty's own timeline. Counsel, following up on Judge Graber's question, I understand your point. But the district court addressed it, and I'm having trouble seeing why it's wrong. The district court at ER 23 said if plaintiff's testimony is credited, which it must be at this stage, it would render her relatively faultless for sending the email, undermining one of DDD's complaints about her. To show pretext, however, plaintiff cannot simply challenge the factual basis of DDD's complaints. She must produce evidence suggesting that LHC did not honestly believe that DDD was dissatisfied and wanted plaintiff off the project. That's correct. This issue is all about pretext. Do we have sufficient evidence of pretext? And I submitted to the court that we do. We have temporal proximity. The district court found, as it should have, that this circuit has ruled that three to eight months is enough to establish pretext alone. This is about two to three months, so that's totally sufficient. The question is, can you apply that temporal proximity to – that applies to a prime and patient case to proximity? And the answer is, yes, you can. Why not? Why doesn't it apply to pretext as well? The district court cites cases in which such evidence or temporal proximity was applied to pretext, but says, well, those are only a couple of days. So why should it matter if the temporal proximity is enough to establish pretext alone, whether it's two to three months or two to three days? It shouldn't matter. The temporal proximity presumption is the same in either case. So we have temporal proximity. We have shifting positions. And I will stand on the record that the reasons that Liberty has given to fire Sue don't add up are shifting. She was told – or Ms. Obert said she decided to fire her for performance issues. She was told when she was fired that no one is saying you did a bad job. And then once we get into court, Liberty is saying, well, the state demanded that Sue be gone, so that's why we fired her. Which is it? Which is it? The jury has to decide those questions. The jury has to tell us who's telling the truth and who isn't. These are fact questions. It's not a summary judgment case. It's not a case to be thrown out of court because this court believes Liberty but doesn't believe Sue. This is a fact case. This is a case all about facts. And importantly, importantly, importantly, Ms. Caselli reported about the company's malfeasance and performance of its contract. No contradictory evidence about that. There's no question that she reported something that was valid and fraudulent. What did Liberty do about it? You're out of time, counsel. Do you want to make a final point? Okay. Liberty did nothing. Ms. Caselli reported sexual harassment, third-party sexual harassment. What did Liberty do about it? Nothing. It did nothing. It didn't – it told her to fend for herself. It didn't address the issue. It didn't investigate the issue. It did nothing. And that's got to be illegal. All right. Thank you, counsel. We'll hear from the appellee. Good morning, Your Honors. May it please the Court. My name is Rita Bustos, counsel for Liberty Healthcare Corporation. The bottom line here is that Liberty – DDD's only – or Liberty's only client was dissatisfied with Ms. Caselli's work as executive director. And after months of expressing this concern to Liberty and Ms. Caselli not approving, DDD requested that Ms. Caselli be removed from their project. Because the DDD project was Liberty's only Arizona project at the time, and Ms. Caselli refused to resign, Liberty had no choice but to terminate her, period. Instead of accepting this legitimate reason for termination, Ms. Caselli made post-termination claims of sexual harassment and gender discrimination and filed this lawsuit repeating those claims, alleging that her termination was retaliation for reporting alleged fraudulent activity and the discrimination and harassment. To be clear, Ms. Caselli did not report any alleged sexual harassment or alleged gender bias to Liberty prior to her termination. And while she did express concerns about Liberty's performance on the DDD contract and the subject matter experts' billing issues, these concerns were expressed after DDD already had significant concerns about Ms. Caselli's ability to lead the project. Why does that matter? I'm sorry, Your Honor? That may well be something that would undermine her credibility if she only made the complaints after DDD complained about her. But why is that germane on summary judgment? Well, Your Honor, it's germane on summary judgment because it shows that there was the legitimate non-retaliatory reason for Ms. Caselli's termination. DDD, the only Arizona client, was dissatisfied with her work for months after Ms. Caselli did not improve in her job as executive director. And then DDD specifically told Liberty, look, we don't want Caselli on our project anymore. Liberty met with Ms. Caselli. Well, Liberty had discussions internally about Ms. Caselli's performance. And they're thinking, Ms. Obert had the meeting with Sue Nadja about their thinking that Ms. Caselli should be removed as executive director or terminated. And then Ms. Obert had a conversation with the directors of the DDD who said, yes, we want Ms. Caselli removed. And that's when Ms. Obert decided that Ms. Caselli would be terminated at that point after DDD made the directive for Ms. Caselli to be removed from the project. So and here what we do have, Your Honors, is, again, we have the McDonnell Douglas burden shifting framework, which really plaintiff just didn't meet here. First, despite plaintiff's contention otherwise, the district court, again, it's all about Liberty's honestly held belief about the reason that for the termination. And that's really, I think, probably one of the most important points here is that first, Ms. Caselli was required to make her prima facie case of the being terminated for a discriminatory or retaliatory. The district court found that she did. Of course, we do argue in our answering brief that the district court did get it wrong. I would like to point out that we did not need to file a cross appeal for that issue for this court to revisit that issue and decide the case to decide that Ms. Caselli did not meet her prima facie burden. But really just an issue of pretext, right? Exactly. However, you analyze it under McDonnell or what? Exactly, Your Honor. And again, this court could go back and find that Ms. Caselli did not make her prima facie case. We did make that argument in our answering brief. But really, I think the more salient issue is the McDonnell Douglas burden shifting framework. So after Ms. Caselli makes her prima facie case, then Liberty has to come forward with a legitimate reason for her termination, non retaliatory, non discrimination reason for her termination. And they more than did that here. And that's a burden of production and not persuasion. So your opponent wants us to reverse on the basis of the temporal proximity issue. So why wouldn't we let the jury decide on that basis? Well, Your Honor, temporal proximity alone, especially in this case, is not enough to show that there was no or that to show pretext. And and not only that, Your Honor, but in this case, there was a pretty significant amount of time from when Ms. Caselli claims that she made these claims of the fraudulent billing practices. Or, you know, she expressed concerns about Liberty's completion of the DDD project. She says that she made those complaints starting in about April and then she was terminated in July. So there is a distance there. But again, temporal proximity alone is not enough. In this case, what plaintiff does need to show is she needs to show the evidence of pretext. And again, she just does not show that here. And just going back to the first part of it, Liberty more than met their burden of production to show the legitimate, non retaliatory reason for her being fired. And again, it's a burden of production, not a persuasion. And then once that happens, then plaintiff must come forward with specific and substantial information or evidence of pretext. So what we have here in terms of the legitimate, non retaliatory reason, we have Ms. Obert's declaration and deposition testimony noting DDD's concerns and ultimate directive to remove Ms. Caselli. We have contemporaneous emails, which Judge Bennett pointed out in the record documenting DDD's concerns about Ms. Caselli's leading of the project. We have the transcript of the telephone call between Ms. Caselli and the HR director and Ms. Obert informing her that unfortunately, either, you know, the client is not happy with your work. We have to remove you from the project. You can either resign or you can be terminated because we have no place else to put you. And then she refused to resign. So she was terminated. Counsel, I'm going to ask you the same question I asked your friend on the other side, just to be sure that you both have a chance to deal with it. Is there any evidence in the record that the client was aware of any whistleblower activity or complaints about sex discrimination or any other protected activity on the part of the plaintiff? No, absolutely not. Your Honor, there is absolutely no evidence in the record that Liberty or DDD was aware of any of these specific issues. Okay. So one, I suppose, can infer from that, that their motives, whatever they were, were not retaliatory or discriminatory. A hundred percent, Your Honor. Absolutely. And I just want to go back to the legitimate non-retaliatory reason, which is an important point, because the legitimate reason for termination may be objectively false. And this court only requires that an employer honestly believe its reasons for the action, even if its reasons were foolish or trivial or even baseless. As long as they weren't discriminatory. I mean, hearkening back to the cases where people said, well, we only want white people serving at this restaurant because our customers don't like it. So if the person asking has a discriminatory or retaliatory motive, it doesn't help you. And that's why I'm focusing on this other question. No, absolutely, Your Honor. And there is absolutely no evidence in the record that DDD had some sort of discriminatory motive for wanting Caselli removed from their project. And what we do have here is Miss Obert's declaration and deposition testimony, which shows that she had the honestly held belief that DDD was not satisfied with Miss Caselli's work and ultimately directed her to be removed. When Miss Caselli did not improve, even after being put on a performance improvement plan, even after Liberty was attempting to work with her. Look, you need to improve your performance here. Our customer is not satisfied. This is our only customer. Miss Caselli did not improve. And then, you know, as we said, as the district pointed out, the straw that broke the camel's back, the dissemination of that email to the entire team, which obviously DDD was not happy with. And we have contemporaneous email documentation about their not being happy with that. And then after that, Miss Obert did have a direct conversation with the DDD representatives who said, look, Caselli needs to be removed. We don't want to work with her anymore. And that's why she was terminated. And Caselli does not provide one scintilla of evidence to show that Miss Obert did not or Liberty did not honestly believe that DDD was dissatisfied with her work and ultimately directed Miss Caselli to be removed from their project. Were the DDD people or any of them deposed? Your Honor, I don't believe so. I'm not 100 percent sure on that. Because I didn't see anything in the record to indicate that DDD was asked one way or the other about whether they made these statements. No, Your Honor. And I. Well, again, I'm not sure if they were deposed, but you're right. Even if they were, that information is not in the record, which Miss Caselli obviously could have put in the record had it been in her favor. And you're right. Miss Caselli is the one who needs to show the evidence of pretext under the McDonnell Douglas burden shifting standard. And Miss Caselli here and I in their reply brief when she's trying to to prove this evidence of pretext, she talks about three critical facts that she says that Liberty has misrepresented to this court. And it's just not correct. First of all, she she says that DDD did not or we did not prevent present any evidence that DDD requested that Miss Caselli be removed. And we absolutely did present that evidence, which is in the record. What it says is that there was no evidence that DDD requested that she be removed before over it made the decision to terminate her. I mean, that's what they said. OK, no, absolutely. And again, that's just incorrect, because we have Cassie's declaration and her deposition testimony where she testifies both in the declaration and in the deposition testimony that DDD had been dissatisfied with Miss Caselli's work for months, which actually is the second critical fact that Miss Caselli points out. They're saying, well, there's no evidence that DDD had complained about Miss Caselli's work in April or May. But we do have that in the record. And so there is also some evidence, including, I think, in her deposition that at some of the meetings with the state, there was conflict between her and the individuals from the state. Yes, absolutely. And that and there's the one meeting that really stands out in the record, July 16th or June 16th meeting where Miss Caselli had an emotional outburst. But even prior to that, we have emails from DDD to Liberty expressing concern about the project. And, you know, we're not happy with the way this project is going. We're not happy with Miss Caselli's work. We have Miss Obert's declaration and deposition testimony where she says, I had meetings with the DDD representatives back in April or May where they said, look, we're not happy with Miss Caselli. She's overly emotional or the other things that she said here. And then we're talking again, going back to the timeline in Miss Obert's deposition testimony. She does say that prior to or when the email was distributed on June, July 22nd, that she had an internal conversation with Sue Nadja from Liberty saying, I think we need to terminate Sue. You know, DDD is not satisfied with their work. But then it was only after she spoke directly with the DDD representatives and they said, yes, we want Caselli removed, that she made the decision to remove Caselli at that point in time. And that's clear from Miss Obert's deposition testimony. We also have what plaintiffs called critical fact number three, that Caselli was told that the main reason for her termination was DDD's dissatisfaction and directed to remove her, which, again, we have evidence in the record that this is absolutely correct. We have the plaintiff herself put in the record the transcript of the phone call with Miss Obert and the HR director where they say, look, you know, we need to make our clients happy. The client is not happy. Yes, we're not saying that you necessarily did a bad job, but the client is saying you're not the person for the job. Well, there's kind of a difference between doing a bad job at Liberty and having a client be dissatisfied somewhere else. Those aren't actually necessarily inconsistent, it seems to me. I don't understand. Well, I guess a client can you were saying before a client can complain and it may not be justified. So it doesn't necessarily mean that she was doing a bad job. Absolutely, Your Honor. And that's true. And that goes back to the employers honestly held belief about the legitimate reason for termination. Liberty honestly believed that DDD did not want to sell on this project and Miss Caselli refused to resign. So DDD had no choice but to terminate her. And the record clearly reflects their honestly held belief there. She seems to be saying, if I may, that she's was they were unhappy with her because she was a woman and that they mistreated the women in these meetings. Did and did your your client have an obligation to address that? Your Honor, and that goes again to the sex discrimination claim. And in that particular claim, and I see that my time is almost up, but I'd like to just answer that question quickly. The important part for that claim is that there is absolutely no evidence that Caselli actually reported to Liberty, her employer, that she felt that these the harshness of DDD and the criticisms that she was receiving about her work were based on sexual harassment or gender based discrimination, which is exactly what she would need to show in order to make the claim of sexual discrimination against her employer, Liberty Health Care. All right. Thank you, counsel. You're out of time, but we'll give you two minutes for rebuttal. Thank you. I would urge the court to look at those emails because there is no evidence that Liberty was unhappy with Caselli in May or April. It just didn't happen. Look at the emails. They were unhappy with Liberty or they were complaining about Liberty's performance, not Caselli's. So, yes, your your honor is right. The state was Liberty's only and big and lucrative client in the state. But is that justification for sexually or allowing your executive director to be sexually harassed? Is that justification for retaliating against her because of her complaints about Liberty's performance of its contracts? So, you know, it's it's not a balancing test. It's it's. Is there sufficient evidence to get to the jury? And that evidence has to be, you know, very little to get past some judgment on a sex harass claim. Very little or on a whistleblower claim. Only a contributing factor to her being fired. So these are these are low standards. The evidence as a whole, I think, passes the threshold of pretext. Pretext includes not only temporal proximity, but the shifting reasons for her termination and the PIP, which is on its face superficially protectual. It's it's all it's all subjective. It's it's it gives her weeks. It doesn't. Counsel said, you know, she didn't improve after the PIP was imposed on her. It was only a matter of days. It was only a matter of she wasn't given the time to do that. So, you know, all of this adds up. You need to look at the evidence that Sue has presented. You need to believe her evidence and not believe Liberty's evidence and make a determination that this case, although perhaps this whole panel would would say, no, I my verdict is for Liberty. That doesn't matter. It's not the judge's position or responsibility to say whether or not someone is telling the truth. That's the jury's responsibility. All right. Thank you, counsel. We thank both counsel for their arguments and the case just argued is submitted with that. We are adjourned for the day.
judges: GRABER, BENNETT, Lefkow